**Tagged for Publication**



**ORDERED in the Southern District of Florida on June 27, 2011.**

John K. Olson, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
**Fort Lauderdale Division**
www.flsb.uscourts.gov

**In re**:

Tomas Agustin and Nuria del Pilar **Jurado**,

Debtors.
_____/

Case No. 10-49243-JKO

Chapter 13

**Order Denying Debtors' Motions to Extend Mortgages beyond Life of Plan**
**[ECF Nos. 59 & 61]**

The Debtors have filed motions seeking to extend two mortgages beyond the life of their Chapter 13 Plan. *See* [ECF Nos. 59 & 61]. The first property is located at 9188 West Atlantic Blvd. # 1522, Coral Springs, FL 33071 (the "Coral Springs Property") and the second property is located at 5021 Wiles Rd #305, Coconut Creek, FL 33073 (the "Coconut Creek Property"). Neither is the Debtors' principal residence.

PNC Bank filed Proof of Claim #1-1 in the amount of $195,528.92 secured by the Coral Springs Property. The Debtors do not challenge the claim, but believe that the claim is

1

undersecured because they think the Coral Springs property is worth $65,430.00. *See* [ECF No. 61], at 1. The Debtors' motion at ECF No. 61 seeks to modify the terms of the note and mortgage, reducing the balance from $195,528.92 to $65,430.00 and reducing the interest rate from 6.75% to 5.25%. The matter was taken under advisement because the Debtors seek to amortize this modification through the original maturity date of March 1, 2026, long after their Chapter 13 Plan would be completed and they receive their discharge.

U.S Bank National Association, as Trustee for Asset Backed Securities Corporation Home Equity Loan Trust, filed Proof of Claim #3-1 in the amount of $282,589.33 secured by the Coconut Creek Property. The Debtors do not challenge this claim either, but believe that it is undersecured because they think the Coconut Creek property is worth $70,560.00. *See* [ECF No. 59], at 1. The Debtors' motion at ECF No. 59 seeks to modify the terms of the note and mortgage, reducing the balance from $282,589.33 to $70,560.00 and reducing the interest rate from 8.8% to 5.25%. This matter was also taken under advisement because the Debtors seek to amortize this modification through the original maturity date of March 1, 2026, long after their Chapter 13 Plan would be completed and they receive their discharge.

*Discussion*

11 U.S.C. § 506(a)(1) provides that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 1322(b)(2) allows the Debtors to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]"  Applying § 506(a)(1) and § 1322(b)(2), the Debtors are able to bifurcate both of the mortgages into secured portions (payable over the life of their Chapter 13 Plan), and unsecured portions (which would receive some percentage dividend over the life of the plan with the remaining balance discharged).

> Section 1322(b)(5) allows the Debtors to:
>
>> . . . notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . .

Using 1322(b)(5), the Debtors are able to cure arrearages over a time period exceeding the life of the Chapter 13 Plan.  The issue presented is whether the Debtors can use § 506(a)(1) and § 1322(b)(2) to bifurcate the mortgages, adjust the interest rates, discharge some of the unsecured portion at plan completion, and then also use § 1322(b)(5) to extend payments on the secured portion of bifurcated mortgages beyond the life of the plan.

The Creditors argue that if the Debtors use § 506(a)(1) and § 1322(b)(2) to bifurcate and modify the claims' balances and interest rates, the secured portions of the bifurcated claims must be paid over the life of the plan.  The Creditors also argue that if the Debtors want to use § 1322(b)(5) to extend payments beyond the life of the plan, the Debtors cannot use § 506(a)(1) and § 1322(b)(2) to bifurcate the mortgages, adjust the interest rates, and discharge some of the newly unsecured debt at plan completion.  Case law in this district is split on this issue.

Judge Hyman in *In re Jerrils*, 2010 Bankr. LEXIS 219 (Bankr. S.D. Fla. Jan. 13, 2010), allowed a Debtor to use both § 1322(b)(2) and § 1322(b)(5) for investment property. The court determined that "the plain language of § 1322(b) . . . lists the provisions that may be included in a plan and connects them with the conjunctive 'and' thereby indicating that a plan may include provisions of the kind referred to in any two or more of those subsections, including (b)(2) and (b)(5)." *Id.* at *3 (quoting *Fed. Nat'l Mortg. Ass'n v. Ferreira (In re Ferreira)*, 223 B.R. 258, at 261 (Bankr. D.R.I. 1996)) (internal quotations omitted). Under this interpretation, a debtor can "both reduce the Creditor's secured claim to the value of the collateral and maintain payments on the secured claim, over the length of the original note and beyond the length of the Debtors' chapter 13 plan." *Id.*

Judge Kimball, however, has held that while § 1322(b)(2) and § 1322(b)(5) are not mutually exclusive, "to use subsection (b)(2) in conjunction with subsection (b)(5), the debtor must modify the rights of the creditor without changing the repayment terms of the loan." *In re Elibo*, 447 B.R. 359 (Bankr. S.D. Fla. 2011). Judge Kimball quoted Judge Lundin's treatise which concludes that:

> . . . the plan cannot modify the mortgage in a way that conflicts with the "maintaining payments" requirement in § 1322(b)(5). The meaning of "maintaining payments" in § 1322(b)(5) becomes critically important. From the reported decisions, maintenance of payments in § 1322(b)(5) means that the debtor must respect the interest rate and the monthly payment in the mortgage contract during the plan and after completion of payments to other creditors under the plan.

*Id.* at 363 (quoting Lundin & Brown, Chapter 13 Bankruptcy, 4th ed., § 128.2, at ¶¶12-14.). Under this interpretation, "a change in the amount of the monthly payments hardly constitutes 'maintenance of payments.'" *Id.* at 363 (quoting *In re McGregor*, 172 B.R. 718, 721 (Bankr. D.

Mass. 1994)). Judge Kimball's interpretation largely follows Judge Isicoff's, which she expressed in 2009:

> In the context of Chapter 13, a debtor has two choices. A debtor may modify the payment terms of the Note, in which case all payments must be completed during the term of the Plan, or the debtor may continue (maintain) payments under the Note and make the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by the court. There would then be "maintenance of payments." Moreover, where a debtor seeks to use the Chapter 13 plan to modify the rights of a secured creditor, the debtor may not pay the secured creditor directly, but only through the Chapter 13 trustee."

*In re Santiago*, 2009 Bankr. LEXIS 3500 (Bankr. S.D. Fla. Oct. 29, 2009) (Isicoff, J.). Both Judge Isicoff's and Judge Kimball's views are in line with Judge Cristol's:

> A debtor may not use § 506(a) in combination with § 1322(b)(5) to reduce the secured claim and repay the claim over a period exceeding the plan [because] [s]ection 1322(b)(2) does not allow a modified secured debt to be paid over a period of time longer than the plan terms . . .

*In re Valdes*, 2010 Bankr. LEXIS 3564 (Bankr. S.D. Fla. Oct. 4, 2010) (internal citations omitted). Judge Ray recently weighed in as well, finding that, if a plan modifies a claim under § 1322(b)(2), the plan must provide for payment of the claim's value in full during the term of the plan. *In re Spencer*, No. 10-24432-RBR (Bankr. S.D. Fla. Feb. 02, 2011) (Ray, J.).

Although both interpretations are reasonable, Judges Cristol, Ray, Isicoff, and Kimball have adopted the interpretation which arrives at the more equitable result in this case. As such, the Debtors may not use § 506(a)(1) and § 1322(b)(2) to bifurcate the mortgages, adjust the interest rates, discharge some of the unsecured portions at plan completion, and then also use § 1322(b)(5) to extend payments on the secured portions beyond the life of their Chapter 13 Plan. For a debtor to take advantage of § 1322(b)(5) and extend payments beyond the life of the

5

Chapter 13 Plan, the debtor must "maintain payments."  As expressed in Judge Lundin's treatise, "maintenance of payments in § 1322(b)(5) means that the debtor must respect the interest rate and the monthly payment in the mortgage contract during the plan and after completion of payments to other creditors under the plan." *Elibo*, 447 B.R. at 363.  The Debtors' motions to extend their mortgages beyond the life of their Chapter 13 Plan **[ECF Nos. 59 & 61]** are accordingly **DENIED**.

SO ORDERED.

# # #

*The Clerk of Court is directed to provide copies of this order
to all interested parties registered to receive notice.*